IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ZEPP REALTY, P.A. and CHARLES ZEPP   *
  *
  *
v.   *   Civil No. RDB-17-1773
  *
  *
SENTINEL INSURANCE COMPANY LTD.   *
  *
  *
********

## MEMORANDUM

Plaintiffs Zepp Realty, P.A. ("Zepp Realty") and Charles Zepp bring this lawsuit against defendant Sentinel Insurance Company Ltd. ("Sentinel") seeking damages for alleged breach of contract. Now pending are defendant Sentinel's motion for summary judgment (ECF No. 15) and plaintiffs Zepp Realty's and Charles Zepp's motion to amend the complaint (ECF No. 14). The parties have fully briefed the motions, and no oral argument is necessary. *See* Local R. 105.6. For the reasons set forth below, defendant's motion for summary judgment is granted. Plaintiffs' motion to amend the complaint is denied as moot.

## BACKGROUND

This dispute arises out of Sentinel's allegedly wrongful refusal to defend and indemnify plaintiffs Zepp Realty and Charles Zepp under their insurance policy with Sentinel in a real-estate related lawsuit filed against Zepp. (ECF No. 2). Plaintiff Zepp Realty is a Maryland real estate sales and development professional services corporation. (ECF No. 2, & 2). Plaintiff Charles Zepp is the sole director, officer, and employee of Zepp Realty. (ECF No. 2, & 4). Defendant Sentinel is an insurance company doing business in Maryland. (ECF No. 2, & 1). On

1

May 20, 2014, Sentinel issued a business liability insurance policy (the "Policy") to Zepp Realty and Charles Zepp (jointly referred to as "Zepp"). (ECF No. 15, Ex. 2, p. 4).

In October 2014, Robert and Kimberly Rullan (the "Rullans") sued Zepp in the Circuit Court for Howard County, Maryland (the "Underlying Action"), setting forth allegations against Zepp in Zepp's capacity as both a real estate developer and real estate agent. *See Rullan v. Sill, Adcock, & Associates LLC, et al.*, Case No. 13-C-14-100892. (ECF No. 2, Ex. D). In the Underlying Action, the Rullans allege they purchased property in a subdivision developed and marketed by Zepp, on which they experienced periodic flooding during rain events. (ECF No. 2, Ex. D, & 35, 44). Describing the flooding, the Rullans allege abnormally large quantities of storm water run-off from nearby properties were diverted onto their property, "resulting in a continuous rapid moving, river-like condition with a depth of one to two feet and a width of up to forty feet flowing onto and through the [Rullans'] property." (ECF No. 2, Ex. D, & 44).

The Rullans first experienced the flooding in the fall of 2011, at which time they notified Zepp of the problem via email. (ECF No. 2, Ex. D, & 45; ECF No. 22, Ex. 5). The Rullans wrote in their email, "there is and has been a large amount of water that collects to the right of our house." (ECF No. 22, Ex. 5). They described the flooding in the email as a "wet pond area" and informed Zepp the flooding was "not just a little bit of a wet area," but was instead "a large area of standing water." (ECF No. 22, Ex. 5). According to the Rullans, Zepp and the homebuilder "acknowledged their responsibility…and undertook efforts to correct such defects." (ECF No. 2, Ex. D, & 45).

After receiving the email, Zepp went to the property and observed "grass was not growing where it was puddling, the grass was dying there, and…[the Rullans] had sandbags on the patio." (ECF No. 22, Ex. 2, Charles Zepp Tr. 90:13). Zepp informed the Rullans they should

2

call the homebuilder to have the problem fixed. (ECF No. 22, Ex. 2, Charles Zepp Tr. 92:11-15). Repair efforts by the homebuilder were unsuccessful. (ECF No. 2, Ex. D, & 46-50).

The Rullans again reached out to Zepp via email on May 1, 2014 to discuss the flooding problem. (ECF No. 22, Ex. 4). This time, they described the flooding with terms such as "a flood plain," "a swamp," and "a 40' wide by 1 ½' deep river." (ECF No. 22, Ex. 4). They informed Zepp the river had caused them to lose all use of their backyard after rain and lamented "no one should have to live like this." (ECF No. 22, Ex. 4). After receiving this email, the Rullans claim Zepp again visited the property and undertook repair efforts, which were ultimately unsuccessful. (ECF No. 2, Ex. D, & 51-57).

In October 2014, the Rullans filed suit against Zepp and other defendants over the property defects. (ECF No. 2, Ex. D). Specifically, the Rullans alleged negligence, negligent misrepresentation, intentional misrepresentation, and unfair and deceptive trade practices against Zepp. (ECF No. 2, Ex. D). The allegations against Zepp were all based on the river-like condition on the property. (ECF No. 2, Ex. D).

Zepp informed Sentinel of the Underlying Action and requested Sentinel defend and indemnify Zepp. (ECF No. 2, & 8). Sentinel denied coverage in a letter dated June 5, 2015, explaining the Underlying Action fell within the Policy's exclusion for real estate development and management activities because the Underlying Action's allegations were based on Zepp's activities as a real estate developer. (ECF No. 2, Ex. B). The letter also reserved Sentinel's right to add new coverage defenses. (ECF No. 2, Ex. B., p. 4). Zepp, through counsel, renewed its request for defense and indemnification by letter dated November 1, 2016. (ECF No. 2, Ex. G). Sentinel again denied the request. (ECF No. 2, Ex. C).

Zepp ultimately settled the Underlying Action with the Rullans for $25,000. (ECF No. 2, & 18). In defending the Underlying Action, Zepp paid $108,577.50 in attorneys' fees and $5,825 in mediation and arbitration fees. (ECF No. 2, & 19).

Plaintiffs filed a complaint in the Circuit Court for Howard County on April 26, 2017, alleging Sentinel breached their contract in refusing to defend and indemnify Zepp in the Underlying Action. (ECF No. 1; ECF No. 2). Defendant removed the case to the District of Maryland on June 27, 2017. (ECF No. 1). Now pending are two motions. First, plaintiffs filed a motion to amend the complaint on September 25, 2017. (ECF No. 14).[1] Second, defendant moved for summary judgment on October 2, 2017. (ECF No. 15). On October 11, 2017, the parties jointly requested the court rule on defendant's motion for summary judgment (ECF No. 15) before ruling on plaintiffs' motion to amend the complaint (ECF No. 14). (ECF No. 18).

## STANDARD

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine issue of material fact exists where, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When reviewing a motion for summary judgment, the court must take all facts and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

---

[1]

4

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The non-movant "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). A court should enter summary judgment when a party fails to make a showing sufficient to establish elements essential to a party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322-23.

## ANALYSIS

### I. Motion for Summary Judgment

Plaintiffs assert a claim for breach of contract against defendant. In response, defendant contends its refusal to defend and indemnify plaintiffs in the Underlying Action was proper under the Policy's known loss provision.[2] I agree with defendant and grant summary judgment in its favor.

#### A. General Principles of Insurance Policy Interpretation

Under Maryland law, an insurance policy is construed according to contract principles.[3] *Md. Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 694 (2015) (citing *Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 540 (2007)). Under the objective law of contract interpretation,

---

[2] Alternatively, Sentinel argues its decision was proper based on either the professional services exclusion of the Policy or the real estate development activities exclusion of the Policy. (ECF No. 15-1). Because this case can be resolved under the known loss provision, it is unnecessary to reach Sentinel's other coverage defenses.

[3] The parties agree Maryland law applies to this action. (ECF No. 15-1, p. 10).

5

"the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract." *Id.* at 694-95 (quoting *Long v. State*, 371 Md. 72, 84 (2002)). If the terms of a contract are clear and unambiguous, then the court construes the contract according to its plain meaning. *Id.* at 695. Any ambiguity in an insurance policy should be "construed liberally in favor of the insured and against the insurer *as drafter of the instrument.*" *Id.* at 695 (quoting *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556 (2001) (emphasis in original)).

The duty of an insurance company to defend its insured can be broader than its duty to indemnify its insured. *Md. Cas. Co.*, 442 Md. at 688. The duty to defend applies to all claims that are *potentially* covered under the insurance policy. *Id.* at 695. The Maryland Court of Appeals has explained,

> The obligation of an insurer to defend its insured under a contract provision…is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer must still defend if there is a potentiality that the claim could be covered by the policy.

*Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407-08 (1975). Determining whether an insurer has a duty to defend is a two-step process. *Md. Cas. Co.*, 442 Md. at 696. First, focusing on the policy itself, the court must decide what the coverage is and what the defenses are under the terms and requirements of the insurance policy. *Id.* Second, focusing on the allegations in the underlying tort suit, the court must decide whether the allegations in the tort action potentially bring the tort claim within the policy's coverage. *Id.*

If the allegations of the underlying complaint leave any uncertainty as to the potentiality of coverage, "any doubt must be resolved in favor of the insured." *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 107 (1995). Additionally, where such uncertainty exists, the insured may

6

rely on extrinsic evidence to establish a potentiality of coverage. *Id.* at 111 ("[A]llowing an insurance company to refuse to defend an insured based solely on allegations in a complaint filed by an uninterested third-party leaves the insured with no choice but to rely on a plaintiff to file a well-pleaded complaint in order to establish a potentiality of coverage under the insured's insurance policy."). An insurance company, however, may not use extrinsic evidence to contest coverage if the underlying complaint establishes a potentiality of coverage. *Id.* at 107-08.

Zepp claims Sentinel had a duty to defend and indemnify Zepp in the Underlying Action under the Policy. Sentinel, however, contends it had no such duties because the Underlying Action was not covered by the Policy under the Policy's known loss provision. To resolve this issue of coverage, this court must first examine the Policy issued by Sentinel to determine the scope of coverage, including any exclusions and limitations. *See Md. Cas. Co.*, 442 Md. at 696. Next, this court must determine whether the allegations in the Underlying Action potentially bring the tort claim against Zepp within the Policy, looking to extrinsic evidence if necessary to resolve any doubts. *See id.*; *Cochran*, 337 Md. at 107-11.

### B. General Scope of Coverage Under the Policy

First, the court must examine the scope of coverage under the Policy's terms. The Policy issued by Sentinel to Zepp applies to "bodily injury"[4] and "property damage"[5] with certain exclusions. (ECF No. 15, Ex. 2, Sec. A.1.b.(1)). Most relevant here is the exclusion for known losses (the "Known Loss Provision"). Specifically, the Policy states coverage only applies where,

---

[4] "Bodily injury" means "physical: a. injury; b. sickness; or c. disease, sustained by a person and, if arising out of the above, mental anguish or death at any time." (ECF No. 15, Ex. 2, Sec. G.5).
[5] "Property damage" means, "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." (ECF No. 15, Ex. 2, Sec. G.20).

7

> Prior to the policy period, no insured...knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part. If such a listed insured...knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred, then any continuation, change, or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period.

(ECF No. 15, Ex. 2, Sec. A.1.b.(1)(c)). The policy explains "bodily injury" or "property damage" is deemed to have been known to have occurred when an insured:

> (1) Reports all or any part of the 'bodily injury' or 'property damage' to us or any other insurer;
> (2) Receives a written or verbal demand or claim for damages because of the 'bodily injury' or 'property damage'; or
> (3) Becomes aware by any other means that 'bodily injury' or 'property damage' has occurred or has begun to occur.

(*Id.* at Sec. A.1.c).

The parties put forth competing interpretations of the Known Loss Provision. Zepp argues it should be interpreted pursuant to the common law known loss doctrine. Under the common law known loss doctrine, insurance coverage is excluded for losses about which "the insured had actual knowledge prior to the policy's effective date." *Stonehenge Eng'g Corp. v. Emp'rs Ins.*, 201 F.3d 296, 301-02 (4th Cir. 2000). To bar coverage, "the insured must know, before obtaining coverage, 'that entry of a judgment against it [in the underlying lawsuit] was *substantially certain* to occur.'" *Unwired Sols., Inc. v. Ohio Sec. Ins. Co.*, No. CCB-16-0405, 2016 WL 7178300, at *6 (D. Md. Dec. 8, 2016) (emphasis added) (quoting *Stonehenge Eng'g Corp.*, 201 F.3d at 301-02 (4th Cir. 2000)).

Sentinel, however, contends the common law known loss doctrine does not apply where the policy contains an explicit known loss provision. Where the policy contains its own known loss provision, as here, Sentinel argues the provision should be enforced as written. I agree with

Sentinel and find the Known Loss Provision in the Policy should be applied according to its plain meaning.

Case law from other states supports Sentinel's position. For example, one court, applying New Jersey law, held that where an insurance policy contains a specific known loss provision, "the [common law] known-loss doctrine does not apply..., and at any rate, cannot be used to defeat the unambiguous contrary intent of the parties as reflected in the policy language itself." *Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 732 F. Supp. 2d 347, 362 (S.D.N.Y. 2010). Applying Connecticut law, another court explained, "the 'known injury or damage' exclusion in [an insurance] policy stands in distinction to [the common law known loss doctrine]; the contractual provision, when it exists, governs independently of the common-law rule, although they may have overlapping effects in certain cases." *Travelers Cas. & Sur. Co. v. Neth. Ins. Co.*, 312 Conn. 714, 749 (2014) (citation omitted). Thus, a known loss provision in an insurance policy that bars liability for mere knowledge of events that may potentially create liability in the future must be enforced according to its own terms, even though the common law known loss doctrine only bars coverage when liability is substantially certain. *See Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 732 F. Supp. 2d 347, 361-62 (S.D.N.Y. 2010).

Sentinel's interpretation is also supported by Maryland law. Although no reported Maryland cases address this specific issue, this court, applying Maryland law, applied a known loss provision according to its plain meaning without reference to the common law known loss doctrine. *Charter Oak Fire Co. v. Am. Capital, Ltd.*, No. DKC-09-0100, 2016 WL 827380, at *11 (D. Md. Mar. 3, 2016), *on reconsideration in part*, No. DKC-09-0100, 2016 WL 8669940 (D. Md. July 1, 2016). Additionally, Maryland contract interpretation principles support enforcing known loss provisions in insurance policies as written. The Maryland Court of

Appeals has stated, "[o]ur primary task in interpreting an insurance policy, as with any contract, is to apply the terms of the contract itself." *Pa. Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 112 (4th Cir. 2012) (alteration in original) (quoting *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305 (2000)). To accomplish this task, the court must, "look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage." *Id.* Thus, enforcing a known loss provision in an insurance policy according to "the terms of the [provision] itself," as opposed to enforcing it in accordance with the common law known loss doctrine, is most faithful to Maryland's principles of contract interpretation. *See id.*

## C. Potentiality of Coverage of Underlying Action Under the Policy

Next, the court must determine whether the allegations of the Underlying Action potentially brought it within the scope of the Policy's coverage. The central dispute is whether coverage is excluded under the Policy's Known Loss Provision. I find coverage is excluded under this provision and thus grant Sentinel's motion for summary judgment.

Without turning to extrinsic evidence, the allegations of the Underlying Action alone establish there was no coverage under the Policy. The Underlying Action alleges Zepp knew as early as the fall of 2011 about the periodic flooding problem on the property. (ECF No. 2, Ex. D, & 45). The Known Loss Provision of the Policy applies where the insured became aware by any means that property damage had occurred or had begun to occur. (ECF No. 15, Ex. 2, Sec. A.1.c.(3)). Thus, Zepp's knowledge of the periodic flooding in the fall of 2011, however limited that knowledge was, is sufficient to exclude from coverage his resultant liability under the terms of the Policy's Known Loss Provision.

Even if the potentiality of coverage was uncertain from the allegations of the Underlying Action, the relevant extrinsic evidence establishes there was no potentiality of coverage. The Rullans first notified Zepp of the periodic flooding problem in 2011 via email, at which time

10

they informed Zepp of a "wet pond area" and described the flooding as a "large area of standing water." (ECF No. 22, Ex. 5). Zepp went to the property and observed the problem personally, seeing how the water was "puddling" and "grass was dying there." (ECF No. 22, Ex. 2, Charles Zepp Tr. 90:13). Zepp received another email from the Rullans on May 1, 2014, informing Zepp that the flooding created a "40' wide by 1 ½' deep river" and caused the Rullans to lose use of their backyard after rain. (ECF No. 22, Ex. 4).

The Rullans' emails and Zepp's own observance of the property show Zepp had notice that the Rullans were experiencing damaging flooding prior to the Policy's effective date. The Policy's Known Loss Provision did not require Zepp know of its liability for the damage with certainty. Additionally, it is irrelevant under the Policy whether the flooding as alleged in the Underlying Action was worse than described in the original emails to Zepp because the policy specifically states, "any continuation, change or resumption of... 'property damage' during or after the policy period will be deemed to have been known prior to the policy period." (ECF No. 15, Ex. 2, Sec. A.1.b.(c)). Even viewed in the light most favorable to Zepp, this extrinsic evidence establishes the periodic flooding alleged in the Underlying Action was a "known loss" under the Policy.[6] Because there was no potentiality of coverage under the Policy, Sentinel did not breach its contract with Zepp in refusing to defend and indemnify Zepp in the Underlying Action. Accordingly, Sentinel is entitled to judgment as a matter of law.

---

[6] The common law known loss doctrine would not bar coverage in the current case. Neither party contends Zepp, before obtaining the Sentinel policy, had knowledge that entry of a judgment against it in the Underlying Action was "substantially certain to occur." *See Unwired Sols., Inc. v. Ohio Sec. Ins. Co.*, No. CCB-16-0405, 2016 WL 7178300, at *6 (D. Md. Dec. 8, 2016). The Underlying Action was filed after the Policy became effective, and none of the evidence suggests Zepp knew with substantial certainty it would be sued and would be liable for the damage. Thus, the allegations of the Underlying Action would be potentially covered under the Policy if the common law doctrine applied.

## II. Motion to Amend the Complaint

In the joint request for a ruling on defendant's motion for summary judgment (ECF No. 18), the parties explained that "a decision on Sentinel's motion for summary judgment, whichever way [this Court] rules, is the shortest path to resolving all disputes concerning insurance coverage for the Rullans' claims against Zepp in the underlying lawsuit that gives rise to this coverage case." (ECF No. 18.) Because Sentinel's motion for summary judgment is granted, Zepp's motion to amend the complaint (ECF No. 14) is denied as moot.

## CONCLUSION

For the aforementioned reasons, defendant Sentinel's motion for summary judgment (ECF No. 15) is granted. Plaintiffs Zepp Realty's and Charles Zepp's motion to amend the complaint (ECF No. 14) is denied. A separate order follows.

February 20, 2018
Date

Richard D. Bennett
United States District Judge